**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

***

UNITED STATES OF AMERICA,

Plaintiff,

vs.

DEANDRE SPENCER COTTON,

Defendant.

Case No. 2:15–cr–94–LDG–VCF

**REPORT & RECOMMENDATION**

MOTION TO SUPPRESS (ECF NO. 42)

This matter involves the United States of America's prosecution of Defendant Deandre Spencer Cotton. Before the court are Cotton's motion to suppress (ECF No. 42) and the Government's response (ECF No. 46). Also before the court is Cotton's supplement (ECF No. 93) and the Government's response (ECF No. 96). The court held an evidentiary hearing at 10:00 a.m. on May 4, 2016. For the reasons stated below, Cotton's motion to suppress should be denied.

**I. Background**

At approximately 9:00 p.m. on January 25, 2015, Defendant Deandre Spencer Cotton was driving north on Koval Lane near Flamingo Ave. (ECF No. 92 at 7) Las Vegas Metropolitan Police Officer K. Ruzicka was driving in the same direction on Koval Lane, and was behind Cotton's vehicle. Officer Ruzicka observed Cotton change lanes without signaling. (*Id.*) Other vehicles stopped to avoid hitting Cotton's vehicle. (Id. at 8) Officer Ruzicka decided to stop Cotton for a traffic violation. (*Id.*) The officer drove behind Cotton's vehicle, and noticed that Cotton used his side mirror to look at the officer. (*Id.* at 11)

While Officer Ruzicka was directly behind him, Cotton quickly turned left onto a side street. (*Id.*) Due to Cotton's sudden turn, the officer was unable to safely conduct the traffic stop. (*Id.*) The

officer continued to travel north on Koval Lane, and waited for an opportunity to stop Cotton's vehicle. (*Id.*)

While waiting, Officer Ruzicka saw Cotton stop by the side of the road, wait approximately one minute, make a U-turn, and proceed to travel north on Koval Lane. (*Id.* at 12) The officer followed Cotton's vehicle, and after Cotton drove into a parking lot, was able to conduct the traffic stop. (*Id.* at 13) Officer Ruzicka approached the driver's side window and immediately smelled the strong odor of marijuana emanating from Cotton's vehicle. (*Id.* at 15) The officer believed that there was illegal marijuana in Cotton's vehicle, and called for additional police officers to assist him. (*Id.*)

While waiting for additional police officer to arrive, Officer Ruzicka ordered Cotton out of the vehicle and asked him if there were any illegal narcotics in the vehicle. (*Id.*) Cotton denied that there were any illegal narcotics in his car, but did not consent to a search of his vehicle. (*Id.* at 17) Metro Sergeant LeBlanc, who had arrived to assist Officer Ruzicka, informed Cotton that due to the strong odor of marijuana, the officers did not need Cotton's permission to search his vehicle. (*Id.*) As Officer Ruzicka began his search, Cotton became visibly nervous. (*Id.*)

In the backseat of Cotton's vehicle, Officer Ruzicka discovered a black backpack. (*Id.* at 45) A search of the backpack produced a small caliber handgun and several bags of marijuana, which were packaged for individual sale. (*Id.*) Cotton was immediately arrested for being a felon in possession of a firearm. (*Id.*) After Officer Ruzicka read Cotton his *Miranda* rights, Cotton denied owning the backpack. (Id.) Cotton also stated that he believed the handgun was missing its firing pin. (ECF No. 42) Cotton was transported to the Clark County detention center and booked on one count of being a felon in possession of a firearm and one count of possession of a controlled substance with intent to distribute. (*Id.*)

In July 2015, a federal grand jury indicted Cotton on one count of being a felon in possession of a firearm, one count of possession of marijuana with intent to distribute, and one count of possession of a firearm in relation to a drug-trafficking crime. Cotton moved to suppress the handgun and marijuana found in his vehicle. This court recommended that Cotton's motion to suppress be denied, and Cotton objected. The district judge remanded Cotton's motion to suppress, and ordered this court to hold an evidentiary hearing. This recommendation follows.

**II. Discussion**

1. Cotton's Request to Continue the Evidentiary Hearing is Denied

When deciding whether to grant a continuance, a court considers: (1) the moving party's diligence in readying his argument before the hearing; (2) "how likely it is the need for a continuance could have been met if the continuance" is granted; (3) inconvenience to the court, the opposing party, and the witnesses; and (4) the extent to which the moving party would suffer harm if a continuance is denied. *United States v. Flynt*, 756 F.2d 1352, 1358 (9th Cir. 1985).

Despite multiple attempts, Cotton was unable to secure the testimony of Katelyn Scott, a passenger in Cotton's vehicle, and Steve Smith, a security guard at the hotel where the traffic stop took place. (ECF No. 93) He now asks for a continuance in order to make another attempt to subpoena these individuals using a private process server.

Considering the *Flynt* factors, this court does not find that Cotton should be granted a continuance. Defense counsel was diligent in preparing for evidentiary hearing. He used the U.S. Marshal Service on multiple occasion to attempt to serve these witnesses. (*Id.*) It also appears that defense counsel also sent his own investigator out to make contact with these witnesses. (*Id.*) Given his past efforts, it unclear whether any number of continuances would allow Cotton to secure the testimony of what he considers a "reluctant witness." (*Id.*)

This court as well as the Government will be greatly inconvenienced if a continuance was granted. Although defense counsel alluded to a "witness issue" at the beginning of the hearing, he chose to "make a record of it at the close of this." (ECF No. 92 at 4) As a result Cotton and defense counsel were able to hear the Government's entire argument opposing the motion to suppress. Defense counsel was aware of his absent witnesses at the beginning of the hearing, and he should have moved for his continuance at that point.

Finally, Cotton would suffer little harm if his continuance was denied. Defense counsel had ample opportunity to cross-examine the Government's witnesses, and attempt to discredit Officer Ruzicka's claim that he smelled marijuana during the traffic stop. The witnesses anticipated testimony would have supported Cotton's principle argument about the marijuana odor. In short, defense counsel made his vigorous arguments regarding the marijuana odor, and there would be marginal benefit in having two witnesses testify in support of his position.

Having considered the aforementioned facts, this court denies Cotton's request for a continuance. In the alternative, Cotton requests an evidentiary hearing in order to determine whether the U.S. Marshal Service's effort to serve the witnesses violated his due process and equal protection rights. The U.S. Marshal Service's policies and procedures regarding the service of subpoenas is ancillary to the issues at the heart of this motion to suppress. Accordingly, the alternative request is denied.

2. The Initial Stop of Cotton's Vehicle Was Justified

a. *Officer Ruzicka Had Probable Cause to Believe that Cotton Committed a Traffic Violation*

Officer Ruzicka's initial stop of Cotton's vehicle was justified. "An officer may conduct a traffic stop if the officer has probable cause to believe that a traffic violation has occurred." *United States v. Fowlkes*, 804 F.3d 954, 971 (9th Cir. 2015). Police officers may use a valid traffic stop as a pretext to

conduct an unrelated criminal investigation. *United States v. Wallace*, 213 F.3d 1216, 1219 (9th Cir. 2000). Here, Officer Ruzicka observed Cotton make an illegal lane change.[1] This observation provided the basis Officer Ruzicka's initial stop.

b. *Officer Ruzicka Had a Reasonable Suspicion That Cotton's Vehicle Contained Contraband*

Even if Officer Ruzicka lacked probable cause to believe that Cotton committed a traffic violation, the initial stop would still be justified as an investigatory traffic stop. "When a law enforcement officer signals a motorist to stop by use of a siren or red light, there has been a seizure which must be justified under the Fourth Amendment." *United States v. Robert L.*, 874 F.2d 701, 703 (9th Cir. 1989). "Police officers, however, may make a brief investigatory stop of a moving vehicle, consistent with the requirements of the fourth amendment, if they are aware of specific, articulable facts leading to a reasonable or founded suspicion that criminal activity is afoot." *Id.*

When a police officer determines there is a reasonable suspicion, he may rely on his experience and specialized training to draw inferences and conclusions about an individual's conduct. *United States v. Valdes-Vega*, 738 F.3d 1074, 1078 (9th Cir. 2013). "A determination that reasonable suspicion exists … need not rule out the possibility of innocent conduct." *United States v. Arvizu*, 534 U.S. 266, 277, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002).

Reasonable suspicion is not easily quantified; it is often described as more than a hunch, but less than probable cause. *Valdes-Vega*, 738 F.3d at 1078. The court reviews a police officer's reasonable suspicion determination under the totality of the circumstances. *Id.*

[1] "A signal of intention to turn right or left, or otherwise turn a vehicle from a direct course, shall be given continuously during not less than the last 100 feet traveled in a business or residential district." NEV. REV. STAT. § 484B.413.

i. *Officer Ruzicka Properly Relied on Cotton's Eye Contact to Establish Reasonable Suspicion*

"[T]he manner in which a suspect looks at or avoids looking at an officer can be a factor in assessing whether criminal activity is afoot." *Arvizu*, 534 U.S. at 277. "Whether the visual contact or lack of it is furtive and suspicious, however, is highly subjective and must be evaluated in light of the circumstances of each case." *Id.*; *see also United States v. Magana*, 797 F.2d 777, 781 (9th Cir. 1986) (driver's constant observation of police vehicle supported an officer's reasonable suspicion that driver was transporting illegal aliens). Officer Ruzicka testified that Cotton was "peering in his side view mirror, it was quick glances, he'd kind of look around, glance back in his side view mirror, to see if I was watching him, to see what my actions were going to be, if I was going to follow him." (ECF No. 92 at 11-12) It is natural to glance in a side mirror to check on one's surroundings. It would be unnatural, and suspicious, for a driver to maintain prolonged eye contact with another driver. Officer Ruzicka concluded that Cotton's actions were an attempt to monitor the patrol car and evade law enforcement. This court finds no reason to disturb the officer's conclusion. *See United State v. Thomas*, 863 F.2d 622, 627 (9th Cir. 1988) ("The test is not whether the conduct under question is consistent with innocent behavior; law enforcement officers do not have to rule out the possibility of innocent behavior.")

ii. *Officer Ruzicka Properly Relied on Cotton's Unusual Behavior to Establish Reasonable Suspicion*

Officer Ruzicka properly relied on Cotton's unusual behavior to establish reasonable suspicion. "[E]rratic driving or obvious attempts to evade officers can support a reasonable suspicion." *United States v. Brignoni-Ponce*, 422 U.S. 873, 885, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975). Officer Ruzicka observed Cotton turn from his original direction of travel, park on a side street, wait for approximately one minute, then continue on his original route. Officer Ruzicka concluded that Cotton's behavior was

consistent with the behavior of an individual who possessed contraband. Under these circumstances, Cotton's behavior appears more suspicious than normal.

Taken together, Cotton's eye contact and unusual behavior was sufficient to justify Officer Ruzicka's investigatory traffic stop.

2. <u>Officer Ruzicka's Warrantless Search of Cotton's Vehicle Was Justified Under the Automobile Exception</u>

"A search or seizure effectuated without a warrant issued upon a probable cause is '*per se* unreasonable under the fourth amendment—subject only to a few specifically established and well delineated exceptions.'" *United States v. Bagley*, 772 F.2d 482, 490 (9th Cir. 1985) (quoting *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)). "One such exception is the 'automobile exception.'" *Id.*

Under the automobile exception, "a legitimately stopped automobile may be searched without a warrant if those conducting the search have probable cause to believe that there is contraband in the automobile." *United States v. Sanchez*, 944 F.2d 497, 498 (9th Cir. 1991). Probable cause that a vehicle contains contraband will also justify the warrantless search of any container located within the automobile that could reasonably contain the contraband. *Id.*

A police officer will have probable cause to search if there is a "fair probability, not certainty or even a preponderance of the evidence" that contraband or evidence is located in a particular place. *United States v. Gourde*, 440 F.3d 1065, 1069 (9th Cir. 2006). An officer may rely on his experience and training to determine if probable cause exists. *United States v. Garza*, 980 F.2d 546, 549 (9th Cir. 1992). "[S]eemingly innocent conduct may provide the basis for probable cause when viewed in light of all the information known at the time of the arrest." *Id.* (driving to the location of a multi-kilogram

drug sale with a known drug courier was a sufficient basis for probable cause to believe that the driver was involved in the drug sale).

Officer Ruzicka had probable cause that Cotton's vehicle contained contraband. Before Officer Ruzicka began his search of Cotton's vehicle, he had observed Cotton monitor and attempt to evade law enforcement, and had smelled marijuana emanating from Cotton's vehicle. Cotton denied that he possessed any illegal narcotics.

Cotton's primary factual contention is that Officer Ruzicka fabricated, or at least exaggerated, his assessment that he smelled marijuana emanating from Cotton's vehicle. To buttress this claim, defense counsel had Officer Ruzicka examine the seized marijuana at the evidentiary hearing:

Defense counsel: Now as you hold that bag in front of you, can you tell us whether or not you can actually smell the smell of marijuana coming from inside of the close package?

Officer Ruzicka: You can actually smell it.

Defense counsel: Would you consider that smell to be potent or pungent?

Officer Ruzicka: Yes.

Defense counsel: And you it be fair to say that in its present form it's in a sealed package?

Officer Ruzicka: Yes, it is.

Defense counsel: And you can still smell the marijuana?

Officer Ruzicka: Correct.

(ECF No. 92 at 18-19)

Defense counsel then asked this court to smell the marijuana, which it did. At the time of the evidentiary hearing, the marijuana had been in storage for approximately 14 months. It is doubtful that the marijuana remained "potent or pungent" after such extended time in storage. In this one instance,

this court believes that Officer Ruzicka may have exaggerated what he smelled during the evidentiary hearing. Although this fact detracts from Officer Ruzicka's credibility, it does not fatally undermine it. This court concludes that Officer Ruzicka testified truthfully that he smelled marijuana emanating from Cotton's vehicle as he approached the open driver's side window.

Cotton next argues that Nevada's medical marijuana statute prevents law enforcement from using the odor of marijuana as a basis for probable cause. Nevada's medical marijuana statute bars law enforcement from basing probable cause solely on the fact that an individual possesses a medical marijuana registry card. NEV. REV. STAT. § 453A.400. The statute however does not prevent law enforcement from considering the odor of marijuana when they determine that probable cause exists. *See id.*

The Ninth Circuit's recent decision *in Lingo v. City of Salem*, No. 14-35344, 2016 WL 4183128 (9th Cir. June 27, 2016) also undermines Cotton's argument. In *Lingo*, the plaintiff was arrested for allowing her children to "remain in a place where unlawful activity involving controlled substances is maintained or conducted." *Id.* at 6. In her § 1983 action, the plaintiff alleged that the officers lacked probable cause to arrest her. *Id.* The Ninth Circuit disagreed. Although Oregon permitted the use of medical marijuana, the officers had verified that the plaintiff did not possess a medical marijuana card. *Id.* This knowledge permitted the officers to conclude that the marijuana they smelled as they approached the plaintiff's house was contraband. *Id.*

While Officer Ruzicka conceded that he never verified whether Cotton had a valid medical marijuana card, he did observe other suspicious behavior. Before making his traffic stop, the officer observed Cotton drive in an evasive manner, and concluded that Cotton's vehicle likely contained contraband. This knowledge is analogous the officers' confirmation that the *Lingo* plaintiff did not have a valid medical marijuana card: both gave the officers reason to believe that the marijuana they

eventually smelled was contraband. *See id.*; *see also United States v. Kerr*, 876 F.2d 1440, 1445 (9th Cir. 1989) ("[T]he presence of the odor of contraband may itself be sufficient to establish probable cause.") When viewed in the context of Cotton's prior behavior, the smell of marijuana at the beginning of the traffic stop was sufficient for the officers to conclude there was probable cause. S*ee Lingo*, 2016 WL 4183128 at 5.

ACCORDINGLY, and for good cause shown.

IT IS HEREBY RECOMMENDED that Cotton's motion to suppress (ECF No. 42) be DENIED.

IT IS SO RECOMMEDNED.

DATED this 23rd day of September, 2016.

_______________________________
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE